UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRIAN W. SEXTON,

    Plaintiff,

v

PANEL PROCESSING, INC.,
a Michigan corporation, and
PANEL PROCESSING OF
COLDWATER, INC.

    Defendants.

Case No. 1:12-cv-10946
Hon. Thomas L. Ludington
Magistrate Judge Charles E. Binder

---

ISACKSON, WALLACE & PFEIFER, P.C.
William A. Pfeifer (P45263)
Attorney for Plaintiff
114 South Second Avenue
Alpena, MI 49707
(989) 354-8242

BODMAN PLC
Steven J. Fishman (P13478)
Donald H. Scharg (P29225)
David A. Malinowski (P72076)
Attorneys for Defendants
201 West Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Panel Processing, Inc. and Panel Processing of Coldwater, Inc., by their attorneys, Bodman PLC, move for summary judgment under Fed. R. Civ. P. 56, for the reasons stated in the accompanying brief. Defendants request that the Court dismiss both of Plaintiff's claims with prejudice.

In accordance with E.D. Mich. LR 7.1(a), Defendants sent Plaintiff a letter in which Defendants explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

                                          BODMAN PLC

                                          By: /s/ Donald Scharg
                                          Steven J. Fishman (P13478)
                                          Donald H. Scharg (P29225)
                                          David A. Malinowski (P72076)
                                          Attorneys for Defendants
                                          201 West Big Beaver Road, Suite 500
                                          Troy, MI 48084
                                          (248) 743-6000

Dated:   June 26, 2012             dscharg@bodmanlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRIAN W. SEXTON,

    Plaintiff,

v

PANEL PROCESSING, INC.,
a Michigan corporation, and
PANEL PROCESSING OF
COLDWATER, INC.

    Defendants.

Case No. 1:12-cv-10946
Hon. Thomas L. Ludington
Magistrate Judge Charles E. Binder

---

| | |
|---|---|
| ISACKSON, WALLACE & PFEIFER, P.C.<br>William A. Pfeifer (P45263)<br>Attorney for Plaintiff<br>114 South Second Avenue<br>Alpena, MI 49707<br>(989) 354-8242 | BODMAN PLC<br>Steven J. Fishman (P13478)<br>Donald H. Scharg (P29225)<br>David A. Malinowski (P72076)<br>Attorneys for Defendants<br>201 West Big Beaver Road, Suite 500<br>Troy, MI 48084<br>(248) 743-6000 |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

STATEMENT OF ISSUES PRESENTED ...................................................................... iii

I.  INTRODUCTION ......................................................................................................1

II. STATEMENT OF MATERIAL FACTS ..................................................................1
    A. Sexton's Former At-Will Employment With Coldwater ....................................1
    B. Panel's Employee Stock Ownership Plan ...........................................................3
    C. The April 2011 Vote For Panel's Board Of Directors .......................................3
    D. The April 29, 2011 Board Meeting .....................................................................4
    E. Sexton's Email Alleging ERISA Violations .......................................................5
    F. Sexton's Request For Attorney Fee Reimbursement ..........................................5

III. ARGUMENT ..............................................................................................................6
    A. All Of Plaintiff's State Law Causes Of Action (Counts I and II) Must Be
       Dismissed As They Are Completely Preempted By ERISA ..............................6
    B. Sexton Has No Claim Under ERISA's Whistleblower Provision ......................8
    C. Sexton's Breach of an Implied Contract Fails Because He Was An At-Will
       Employee ............................................................................................................9

IV. CONCLUSION .........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health, Inc. v Davilai*, 542 U.S. 200, 208; 124 S.Ct. 2488 (2004) ........................................ 6
*Alesi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 424; 101 S.Ct. 1895 (1983) .......................... 6
*Authier v Ginsberg*, 757 F.2d 796, 800 (6th Cir. 1985) .................................................................. 6
*Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272, 1275 (6th Cir. 1991) ................. 6, 7
*DeFelice v. Heritage Animal Hospital,* 2010 WL 3906147 *5 (ED Mich) ............................... 6, 7
*Edwards v A.H. Cornell & Son, Inc.,* 610 F.3d 217 (3rd Cir. 2010) ............................................... 9
*Eliel v Sears, Roebuck & Co.*, 150 Mich. App. 137 (1985) .......................................................... 10
*Hashimoto v Bank of Hawaii*, 999 F.2d 408 (9th Cir. 1993) ........................................................... 7
*McSharry v Unumprovident Corp.*, 237 F.Supp.2d 875, 881 (ED Tenn. 2002) ........................... 7
*Nieves v Bell Indus., Inc.*, 204 Mich. App. 459 (1994) ............................................................ 7, 11
*Pepperman v Auto. Club of Mich. Ins. Grp.,* 181 Mich. App. 519, 521 (1989) ............................ 9
*Twoney v Meldisco*, 1991 WL 630505 (E.D. Mich. 1991) .......................................................... 10

**Statutes**

29 U.S.C. § 1140 .......................................................................................................................... 8, 9
29 U.S.C. § 1144(a) .......................................................................................................................... 6
Employee Retirement Income Security Act ("ERISA") of 1974,
    29 U.S.C. 1001, et. seq. ....................................................................... iii, 1, 4, 6, 7, 8, 9
Michigan's Whistleblower Protection Act, MCLA 15.361 et. seq. ................................................ 1

## STATEMENT OF ISSUES PRESENTED

1. Whether the Employee Retirement Income Security Act ("ERISA") preempts all of Plaintiff's state-law claims under Michigan's Whistleblower Protection Act (Count I) and his claim for breach of an implied contract (Count II).

        Plaintiff states:    No

        Defendants state:    Yes

2. Even if Plaintiff recasts his state law claims to allege an ERISA retaliation violation, any potential ERISA claim under Count I and II must be dismissed because he did not engage in protected activity under ERISA.

        Plaintiff states:    No

        Defendants state:    Yes

3. Whether Plaintiff's state law breach of implied contract claim (Count II) fails because he was an at-will employee.

        Plaintiff states:    No

        Defendants state:    Yes

## I. INTRODUCTION

Plaintiff Brian Sexton ("Plaintiff" or "Sexton") is a former employee of Panel Processing, Inc., ("PPI") and Panel Processing of Coldwater ("Coldwater") (collectively "Panel" or "Defendants"). He is suing Panel alleging that he was discharged in violation of Michigan's Whistleblower Protection Act, MCLA 15.361 et. seq. ("WPA") and in breach of his implied employment contract because of his actions and/or threatened actions under the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. 1001, et. seq., pertaining to an Employee Stock Ownership Plan ("ESOP").

Plaintiff's deposition confirms that he cannot state his claims against Panel. This motion for summary judgment, based on Plaintiff's deposition, seeks dismissal of all of Sexton's claims. The lawsuit must be dismissed because both of his state-law allegations are preempted by ERISA. Furthermore, even if he did bring an action under ERISA, his complaint would still have to be dismissed as he did not engage in protected activity under ERISA's whistleblower / retaliation provision. In addition, Sexton's breach of implied contract claim must be dismissed because he executed several documents acknowledging that his "at-will" status would never be changed by Panel.

## II. STATEMENT OF MATERIAL FACTS

### A. Sexton's Former At-Will Employment With Coldwater

Before his discharge, Sexton held the position of General Manager of Coldwater (EX 1[1] p. 15). As the Coldwater General Manager, he held the top management position and was in charge of effectively managing Coldwater's three (3) plants (EX 1, p.15-16; deposition exhibit 3,

---

[1] EX 1 is the deposition transcript from the deposition of Sexton.

1

attached as EX 2). In the General Manager position, Sexton reported to Al Kelsey ("Kelsey"), Panel's COO, who was based in Alpena, MI (EX 1, p. 26).

As a General Manager Sexton was an at-will employee of Coldwater (EX 1, p. 38; deposition exhibits 5, 6, and 7, attached as EX 3, EX 4, and EX 5). Sexton even admitted his at-will employment status at his deposition:

> Q. (By Mr. Scharg) "At the time of your termination, is there anything that led you to believe that you were not an at-will employee?"
>
> A. (By Mr. Sexton) "No."
>
> Q. (By Mr. Scharg) "So stated another way, at the time of your termination, you understood that you were an at-will employee?"
>
> A. (By Mr. Sexton) "Correct."

(EX 1, p. 38).

In an attempt to avoid his at-will employment status, Sexton claimed that during a 2003 conversation with Panel's CEO Eric Smith ("Smith"), he was offered a director position at Panel and Smith gave Sexton a verbal assurance that his actions as a director would not affect his position (EX 1 p. 235-236). Approximately a year later, in 2004, Sexton executed a written at-will disclaimer confirming that he was an at-will employee:

> I also understand that the Company abides by employment-at-will, which permits the company or the employee to terminate the employment relationship at any time, for any reason, with or without notice. **The company will not modify their policy of employment-at-will in any case.**

(EX 1 p. 33; deposition exhibit 5, attached as EX 3) (Emphasis added).

The at-will disclaimer, EX 3, notified Sexton that Panel would not modify his at-will status. He signed a similar at-will statement in 1999 (EX 1 p. 33; deposition exhibit 6, attached as EX 4).

2

As late as June 15, 2007, Sexton admittedly signed an agreement which explicitly stated it did "not change the at-will nature of my employment with Panel Processing...I also understand that this Agreement may only be changed in writing, signed by me and the President of Panel Processing." (EX 1, p. 33-34; deposition exhibit 7, attached as EX 5) Sexton acknowledges that he did not receive a signed document by President Smith changing his at-will status (EX 1 p. 36).

**B.   Panel's Employee Stock Ownership Plan**

Panel employees participate in an ESOP. (EX 1 p. 42, deposition exhibit 10, attached as EX 6). The ESOP is governed by the Employee Stock Ownership and Money Purchase Pension Trust Agreement ("ESOP Agreement") which provides for a committee of Trustees to manage the ESOP (EX 1 p. 49; deposition exhibit 10, attached as EX 6 p.3-4). Under the ESOP Agreement, employee participants only have the right to vote company stock for "[t]he approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all the assets of a trade or business, or other similar transactions prescribed by regulation." (EX 1 p. 50-51; deposition exhibit 10, attached as EX 6 p.4). If the employee does not vote their shares, the ESOP Agreement provides that the Trustee Committee will vote for them. (EX 1 p. 50-51; deposition exhibit 10, attached as EX 6 p.4). The Trustee Committee also has the authority to vote stock that is not allocated to the employees. (EX 1 p. 50-51; deposition exhibit 10, attached as EX 6 p.4).

**C.   The April 2011 Vote For Panel's Board Of Directors**

In April 2011, the Trustee Committee consisted of Sexton, Robert Karsten, and Smith (deposition exhibit 10, attached as EX 6 p.1). Panel's Board of Directors at that time consisted of four (4) inside directors: Smith, Sexton, Tom Karsten, and Panel COO Kelsey and three outside directors: George LaFleche, Mike Kelly, and Robert Karsten (EX1 p. 53-54).

Around April of 2011, LaFleche's outside Board of Director position and Kelsey's inside Board of Director position were up for re-election (deposition exhibit 13, attached as EX 7). Both LaFleche and Kelsey were the only individuals nominated for the election (deposition exhibit 13, attached as EX 7). However, a write-in vote campaign had begun for the purposes of electing Panel employees James Skiba ("Skiba") and Robert Fitch ("Fitch") to the Board of Directors (EX 1 p. 71-72). Although the ESOP Agreement did not provide for employee voting of directors, the Trustee Committee still sent ballots to employees to allow them to provide an advisory vote for the election of the directors. (EX 1 p. 63-64).

Following the return of the employee ballots, it was determined that Fitch and Skiba had the most employee votes (EX 1 p. 79-80, deposition exhibit 22, attached as EX 8).

### D. The April 29, 2011 Board Meeting

Board of director and trustee meetings originally scheduled for April 15, 2011 were adjourned by Smith to April 29, 2011 (EX 1 p. 78-84; deposition exhibit 24, attached as EX 9). At the April 29, 2011 board meeting, the existing Panel Board of Directors met and voted to remove Sexton and Robert Karsten as Trustees (EX 1 p.88-89; deposition exhibit 30, attached as EX 10). Kelly was voted in as a Trustee (EX 1 p. 88-89; deposition exhibit 30, attached as EX 10).

Following the April 29, 2011 Board of Director meeting, Smith and Kelly, held a Trustee meeting (EX 1 p.88-89). Kelsey and LaFleche were re-elected to the Board of Directors (EX 1 p. 227).

4

### E. Sexton's Email Alleging ERISA Violations

On May 2, 2011, Sexton sent Smith an unsolicited e-mail complaining about alleged violations of ERISA and other laws concerning his removal as Trustee and the refusal to seat Skiba and Fitch as Directors (EX 1 p. 97). In this e-mail, Sexton stated:

> I believe that your actions on Friday in refusing to seat Bob Fitch and Jim Skiba as directors of the company and removing Rob Karsten and me as Trustees of the ESOP are violations of ERISA and the Michigan Business Corporations Act and other state and federal laws, I plan to bring these violations to the attention of the U.S. Department of Labor and Michigan Department of Licensing and Regulatory Affairs unless they are immediately remedied.

(deposition exhibit 35, attached as EX 12).

Sexton admits that he did not report any suspected violation of law to either the U.S. Department of Labor or any other public body (EX 1 p. 97, 99). Aside from this e-mail, Sexton conceded that they only action he took regarding his complaint was to talk with co-employee William Zaborney ("Zaborney") who had contacted the Michigan Department of Regulatory Affairs (and was told he was on his own) and talking to private attorneys about bringing a lawsuit:

> Q. (By Mr. Scharg) "So you made – you had the threat [May 2, 2011 e-mail], you talked to attorneys, you talked to Zaborney, and basically that's what – everything you did?"
>
> A. (By Mr. Sexton) "That's correct"

(EX 1 p. 102).

Sexton did nothing else regarding his complaint of perceived violations of law in connection with his complaint (EX 1, p. 102).

### F. Sexton's Request For Attorney Fee Reimbursement

At his deposition, Sexton claimed that his request for attorney fee reimbursement was support for his wrongful termination (EX 1 p. 228). Around October 17, 2011, Sexton sent Panel

5

a request for attorney fee reimbursement for fees that he incurred as a Trustee for attempting to seat Skiba and Fitch on the Board of Directors (deposition exhibit 72, attached as EX 13). Panel responded by requesting an itemized statement of the fees incurred by Sexton (EX 1 p. 229).

### III. ARGUMENT

#### A. All Of Plaintiff's State Law Causes Of Action (Counts I and II) Must Be Dismissed As They Are Completely Preempted By ERISA

The ERISA preemption of state law claims is broad. *Aetna Health, Inc. v Davilai*, 542 U.S. 200, 208; 124 S.Ct. 2488 (2004). ERISA's own preemption section, 29 U.S.C. § 1144(a), provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The Supreme Court instructs, "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health,* at 209. "ERISA preempts state law and state law claims that 'relate to' any employee benefit plan as that term is defined [in the statute]..." and "'relate to' is given broad meaning such that a state law cause of action is preempted if 'it has connection with or reference to that plan.'" *DeFelice v. Heritage Animal Hospital,* 2010 WL 3906147 *5 (ED Mich)[2] (quoting, *Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272, 1275 (6th Cir. 1991). Regardless of the name that Sexton attaches to his cause of action, if the action relates to an ERISA plan it is preempted. *Authier v Ginsberg*, 757 F.2d 796, 800 (6th Cir. 1985). The Sixth Circuit based this conclusion on the Supreme Court's instruction, "[t]hat the crucial inquiry is not the purpose of the action; rather, its relation to an ERISA...plan is determinative." *Id.* (citing, *Alesi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 424; 101 S.Ct. 1895 (1983).

---

[2] Unpublished cases are grouped together as EX 14.

6

In *Authier,* plaintiff brought a Michigan common-law cause of action for wrongful discharge. *Id.* at 798. He alleged termination after he sent letters to plan participants of a profit sharing plan that expressed concern that proposed future changes could violate ERISA. *Id.* at 790-800. The court concluded that because plaintiff's claim hinged on obligations under ERISA, his state-law claim was preempted by ERISA because "ERISA created a substantive element of the Michigan action . . ." *Id.* at 800.

The Eastern District Court of Michigan has been faced with a similar Michigan state-law WPA claim based on alleged ERISA violations. In *Defelice,* the plaintiff allegedly was discharged after complaining to management about an issue with her retirement account and subsequently reporting her suspected belief that the employer violated ERISA to the sheriff's department. *Id.* at *1. She sued the employer, alleging, in part, violations of Michigan's WPA. Citing the Sixth Circuit's case in *Cromwell,* the court noted the broad preemption of ERISA over state law claims. *Id.* at * 6. The District Count found that the plaintiff's Michigan WPA claim was completely preempted by ERISA. *Id.* Summary judgment was granted to the defendants.

Similarly, *McSharry v Unumprovident Corp.* found that plaintiff's state whistleblower complaint and common law wrongful discharge complaint were completely preempted by ERISA under the complete preemption doctrine. The court stated "by [Congress] providing an ERISA civil enforcement causes of action, [ERISA] completely preempts any state cause of action seeking the same relief, regardless of how artfully the complaint is pleaded as a state law claim." *McSharry v Unumprovident Corp.*, 237 F.Supp.2d 875, 881 (ED Tenn. 2002).

The Ninth Circuit also found ERISA preempted a state whistleblower complaint. In *Hashimoto v Bank of Hawaii*, 999 F.2d 408 (9th Cir. 1993), the employee alleged that she was terminated for complaining about ERISA violations. *Id.* at 410. The court stated that to

"determine whether [plaintiff's] complaints were a motivating factor in her discharge, the court must find not only the existence of an ERISA plan but also must interpret ERISA to determine whether a violation of law existed or potentially existed." *Id.*

The instant case is no different. Sexton's state-law complaints allege state whistleblower (Count I) and an implied breach of contract (Count II) stemming from his discharge. (deposition exhibit 1, attached as EX 11, ¶ 6, 9, 10, 13 and 20). In his Complaint, Sexton alleges whistleblower protection and retaliatory discharge in breach of an implied contract because he questioned the legality of actions taken by Smith and the Trustees (deposition exhibit 1, attached as EX 11 ¶ 6). Sexton also alleged that he complained that the actions taken to remove him from his Trustee position violated ERISA (deposition exhibit 1, attached as EX 11 ¶ 9). All of these claims are preempted by ERISA, because they depend upon the existence of the ERISA plan and alleged violations of duties imposed by ERISA, and interpretation of ERISA. The state-law causes of action are preempted because ERISA contains its own anti-retaliation and whistleblower provision. *Defelice; McSharry;.* 29 U.S.C. § 1140.

## B. Sexton Has No Claim Under ERISA's Whistleblower Provision

Sexton cannot even allege a violation of ERISA's whistleblower provision. Such a claim is futile. He did not engage in ERISA protected activity.

ERISA's whistleblower provision provides:

> It shall be unlawful for any person to **discharge**, fine, suspend, expel, or discriminate against any person **because he has given information or has testified or is about to testify in any inquiry or proceeding** relating to this chapter or the Welfare and Pension Plan's Disclosure Act.

29 U.S.C. § 1140 (emphasis added).

8

Simply put, in order to engage in protected activity under ERISA, a plaintiff must give information, testify, or be about to testify in any inquiry or proceeding relating to ERISA. 29 U.S.C. § 1140. Sexton admittedly did not give information in any inquiry or proceeding nor did he testify or was he about to testify in any inquiry or proceeding.

*Edwards v A.H. Cornell & Son, Inc.*, 610 F.3d 217 (3rd Cir. 2010) is instructive. The plaintiff alleged that she was terminated as a result of her objections ad complaints to management about ERISA violations. Rejecting the retaliation claim, the court found that plaintiff did not get engage in an inquiry or investigation under § 1140 because the information that plaintiff relayed to management was unsolicited, not part of an inquiry of the employee, and was not a complaint that sought information. *Id.* at 223.

Similarly, Sexton admits that he sent one unsolicited e-mail (EX 1 p. 97). He did not participate in an inquiry or investigation. In fact, he did not even contact a public body (EX 1 p. 97). Sexton's one email on May 2, 2011, conversation with the employee director, and conversations with attorneys, request for reimbursement of trustee expenses, and removal as a trustee are not enough to state a § 1140 claim (EX 1 p. 102). Therefore, Sexton's complaints about ERISA retaliation violation must be dismissed.

C.  **Sexton's Breach of an Implied Contract Fails Because He Was An At-Will Employee**

Sexton's state-law complaint for breach of an implied contract fails because he was an at-will employee. His at-will status was acknowledged by him in at least two (2) at-will disclaimers. The last at-will disclaimer he executed in 2007 specifically stated that the at-will status could only be altered in writing signed by Panel's President. Even Sexton admitted he did not receive any writing signed by Panel's president altering his at-will status. Sexton cannot avoid his at-will status by claiming that in 2003 Smith altered his at will status by stating he

9

would not be terminated for trustee decisions. Michigan courts have constantly rejected claims similar to Sexton's implied contract claim.

Michigan law is clear. In ***Pepperman v Auto. Club of Mich. Ins. Grp.,*** 181 Mich. App. 519, 521 (1989), plaintiff's employment agreement stated, "[t]he Company and the Employee agree that his/her employment can be terminated with or without cause, at any time...This agreement constitutes the entire agreement between the Company and the Employee, and it shall not be altered or amended except by an agreement in writing signed by the Employee and the Company president's designated representative." Plaintiff alleged that his branch manager's oral assurances of job security modified this agreement, thus making plaintiff's employment just cause. *Id.* at 522. The appellate court held that "the nonmodification clauses of the contract negate plaintiff's allegations of subsequent contrary oral assertions made by his branch manager," and the express terms of the contract are binding. *Id.* (citing ***Eliel v Sears, Roebuck & Co.,*** 150 Mich. App. 137 (1985)). The court then granted defendant's motion for summary disposition. *Id.*

Similarly, in ***Twoney v Meldisco,*** 1991 WL 630505 (E.D. Mich. 1991)(EX 14), an employer's oral assurances of job security did not modify the employment agreement. In this case, plaintiff was employed by defendant and was explicitly told that the company would not "terminate or layoff employees except for good reasons or good cause." *Id.* at *2. When plaintiff was terminated, he sued for wrongful discharge. *Id.* at *1. His employment contract stated that he was an at will employee and "that no modification or waiver of any condition of this agreement or any alleged new or superseding agreement shall be effective or binding upon the Company unless same is in writing and signed by an officer of the Company." *Id.* at *2. The court held that plaintiff's expectations for just cause employment were not

10

legitimate or reasonable despite the oral assurances. *Id.* at *4. The court reasoned that "[p]laintiff clearly signed numerous contracts which indicated that employment was at will," and therefore could not rely on the oral representations of his superiors. *Id.*

*Nieves v Bell Indus., Inc.*, 204 Mich. App. 459 (1994) is controlling. The plaintiff interviewed for a job with defendant and received oral assurances that he "would not be arbitrarily fired." *Id.* at 460. He accepted the position with defendant and signed an employment agreement conferring at-will status and that the "termination policy [cannot] be changed except in writing signed by an authorized representative of the company." *Id.* at 461. When plaintiff asked a superior about the at-will language in the agreement he was told that the provision did not apply to him. *Id.* After given a "General Manager's Compensation Agreement" which confirmed he was an at will employee, plaintiff asked a superior to strike the at-will provision, but was told once again that this language did not apply to him and signed the agreement. *Id.* Eventually plaintiff's employment was terminated, and he brought suit for wrongful discharge and misrepresentation. *Id.* at 460. Dismissing the wrongful discharge claim, the Appellate Court held that, "[e]ven if we do agree that there was an oral agreement that plaintiff had a just-cause employment contract, the General Manager's Compensation Agreement that plaintiff signed clearly and unambiguously defined the terms of plaintiff's employment." *Id.* at 463.

The instant case is no different, Sexton relies upon Smith's 2003 alleged verbal promise that his actions as a director or trustee would not affect his position (EX 1 p. 236). Sexton, however, executed a 2004 at-will disclaimer and a 2007 agreement confirming that he was an at-will employee (deposition exhibits 5 and 7, attached as EX 3 and 5). The at-will disclaimer stated that the Company would not modify its at-will policy (deposition exhibit 5, attached as EX 3). And the 2007 agreement stated that changes had to be in writing and signed from the

President of Panel (deposition exhibit 7, attached as EX 5). Sexton admits that he did not receive a signed statement changing his at-will status. Moreover, Sexton even admitted that he was an at-will employee at the time of his termination This Court can only conclude that Sexton, at the time of his termination, was an at-will employee.

Accordingly, with an at-will statement and a written non-modification statement of that policy, Michigan courts clearly find that plaintiff cannot maintain a breach of implied-contract claim.

## IV. CONCLUSION

For all of the foregoing reasons, this Court should grant Defendant's Motion For Summary Judgment on Count I and Count II of the Complaint.

BODMAN PLC

By: /s/Donald H. Scharg
Steven J. Fishman (P13478)
Donald H. Scharg (P29225)
David A. Malinowski (P72076)
Attorneys for Defendants
201 West Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
dscharg@bodmanlaw.com

Dated: June 26, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to:

bill@alpenalegal.com

BODMAN PLC

By: /s/Donald H. Scharg
Steven J. Fishman (P13478)
Donald H. Scharg (P29225)
David A. Malinowski (P72076)
Attorneys for Defendants
201 West Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
Dated: June 26, 2012     dscharg@bodmanlaw.com

13

Troy_664704_1